Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 5th Division, the Honorable Thomas Hoffman presiding, case number 1-9-0213, People v. Aaron Carroll. Counsels, would you please identify yourselves so we can make sure your audios are working? And who's representing the Appellant? I am, Your Honor, this is Katrina Hausfeld and my colleague Tom Gesselbrock is also on the phone. Yes, Your Honor, I'm here as well, but Ms. Hausfeld will be handling the argument. All right, who's representing the state? I am, Your Honor, I am Stacey Weber, I'm on argument on behalf of the people. Okay, the time allotted for oral argument is 15 minutes for the Appellant, 15 minutes for the Appellee, five minutes in rebuttal. There are no timing lights, but I'm going to hold you to the time. So, you can begin when you're ready. Thank you, Your Honor. May it please the Court, my name is Katrina Hausfeld and I, along with my colleague Tom Gesselbrock, represent Aaron Carroll. The appeal before you today is quite simply a case of mistaken identity. The evidence presented by the state was insufficient to prove Mr. Carroll guilty, beyond a reasonable doubt, of aggravated battery with a firearm, and aggravated discharge of a firearm. While reviewing courts do not normally substitute their judgment for that of a trier of fact, it is appropriate to do so where, as here, the evidence is palpably contrary to the verdict, or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. But even if this Court should ultimately decline to reverse Mr. Carroll's conviction on both inconsistent with the one-act, one-crime doctrine, and the case remanded to the trial court for reconsideration of his sentence. In the absence of any physical evidence connecting Mr. Carroll to the crime, the state's case hinges solely on the questionable identifications of Mr. Carroll as the driver of the gold sedan and the shooter by three witnesses, Danny Ferencz, and Agent Frederick. Before you get into that issue, was this man ever sentenced on the second crime? The record isn't clear on that, Your Honor. Well, if he wasn't sentenced, he wasn't convicted. Correct, Your Honor. So he was convicted on two charges, and the record is clear that he was convicted on two charges. But wasn't he sentenced on both? The sentence isn't clear, Your Honor. It doesn't say which part of the sentence relates to which charge. It just says he's convicted of these two charges, and this is his sentence. All right, go ahead. So in the absence of... Sorry? When you say the record doesn't reflect, the sentencing order, the half-sheet, the clerk's count, he was convicted on count seven, and that count eight merged into count seven. So isn't it more clear that there was a finding of guilty as to the other charge, but not really a conviction, and that there was no sentence? I guess I'm not sure I follow, Your Honor. So because the charges were merged, and he was still... The charges were merged, and he was sentenced based on the merged charges. It's unclear as to which part of the sentence would have been different. If the sentence would have been different at all, should there have only been one count. But regardless... Hold on. Didn't he receive the minimum sentence? He did, Your Honor. But again... On the more serious offense? He did, Your Honor. And so he could never get a lower sentence than that on the more serious offense. So what's the remand all about? So, Your Honor, the state has admitted error in the conviction of Mr. Carroll on both the aggravated battery with a firearm and the aggravated discharge of a firearm charges, but they haven't taken any steps to correct the error, which is why we're asking this court to do so. What would you like us to do? Certainly. And remanding the case for resentencing may ultimately, as you pointed out, result in the same result. But taking into account the time Mr. Carroll has already... Yes, ma'am. That doesn't make any sense. He got the lowest possible sentence on the more serious offense. The less serious offense would be the one that would have to be vacated. So we vacate that sentence and send it back to do what? Give him the lowest possible sentence again? But taking into account time served pending trial and appeal, and it has to be properly accounted for, Your Honor. To do otherwise would compromise the integrity of the judicial process. Ma'am, you shouldn't try to defend the indefensible. I'm not trying to defend the indefensible, Your Honor. It has nothing to do on a remand. Nothing. If we were to agree with you, the only thing we would do is vacate his conviction for the less serious offense and his conviction for the more serious offense in his sentence at the minimum would stand. But second of all, the half sheet and the rest of them reflected he was only sentenced on the more serious offense, not the less serious. He was sentenced on count seven, but not count eight. But... There's no judgment. Well, even if even if that's the case, Your Honor, the record still reflects that he was convicted on two counts, and that's still an it is still a violation of the one act one crime doctrine. And those are reviewable as the state has admitted under the second prong of the plein air rule. And we're asking this court to correct the record. And again, before you even get to that, I think the I think it's appropriate for this court to fully reverse the chart, the convictions against Mr. Carroll. But if this court disagrees and we're going to focus on the one act one crime doctrine, the harm to Mr. Carroll caused by failure to vacate improper convictions for a lesser offense isn't just limited to the sentence. Is the Illinois Supreme Court recognized in people versus Davis? A defendant can be subject to future prejudice as a result of improper convictions. And regardless of whether the sentence relates to only count seven as opposed to count eight, and we can continue to discuss that if you would like the the larger issue is that, you know, following his release, if he was to apply for future employment, per se, and be subjected to a criminal record check, it would still show that he has two convictions when one of those convictions is a violation of the one act one crime doctrine. You know, if he's ever unfortunate, you only have 15 minutes and you are wasting your time on an issue. It is so minor in this case. You better start addressing the real issue is whether he should have been convicted at all. Sure. And sure, Your Honor, I'm happy to address that. So whether he should have even been convicted at all, you know, the state has failed to prove that he was guilty beyond a reasonable doubt. The absence of any physical evidence connecting Mr. Carroll to the crime is, you know, this without that the state's case hinges solely on the questionable identifications. Mr. Carroll, as the driver of the gold sedan and the shooter by these three witnesses, parents, Agent Frederick and George Lee. And the state has agreed that in assessing the reliability of identification testimony, this court should rely on the test set out in Neal versus Biggers. And Biggers, as I'm sure this court knows, directs the prior fact consider all of the facts and circumstances against five factors. The witnesses opportunity to view the offender at the time of the offense. The witnesses degree of attention at the time of the offense. The accuracy of any previous description of the offender by the witness. The degree of certainty shown by the witness and identifying the defendant. We know the Biggers factors. Okay. Tell us why these three witnesses who identified him. Their identifications fail under the Biggers factors. Certainly by one. Certainly. So the opportunity to view the offender is the first bigger step. So whether or not a witness has the opportunity to view an offender. Ma'am. Yes. Why is the identification by Frederick? Why doesn't it hold up under the Biggers factor? Then tell us why the identification by Florence doesn't hold up under the Biggers factor and tell us why Lee's doesn't. We know what the factors are. And the problem with them. Certainly. So Frederick initially testified again under the going through the Biggers factors in order. He initially testified that it was dark and the driver of the gold sedan whom he had never seen before and was facing away from him when they spoke for only two to three minutes. The driver was wearing a black hoodie with his hood up during his face. And so by his own admission, he didn't have adequate conditions to observe the offender. When you go to the degree of attention at the time of the offense for. He spoke to the driver for perhaps two or three minutes. And the driver again, as I mentioned, was 10 feet away with his back to him. The accuracy of his prior descriptions of the offender. So the only description that anybody was actually going to all three Frederick, or Lee were able to be able to provide is that it was an individual with his with a black hoodie with a hood up that obscured his face and his hair. There's no identifying characteristics that were presented. Going to the last two Biggers factors with with a drink. He. He was able to identify Mr. Carroll as a shooter in both the lineup and in court at trial. But by his own admission, he said he had never seen Mr. Carroll before. And his testimony showed that whoever the individual was that he thought was Mr. Carroll had obscured his face and his hair. So there's no way he could have had an actual actual ability to identify Mr. Carroll, who he had never met. Going to Mr. Lee, I think, is the one you wanted me to address next. Mr. Lee, likewise, had said that it was dark out. And the driver's face and hair were obscured by his hood. He made it very clear in his testimony that he hadn't paid much attention to the driver of the gold sedan prior to the shooting. He didn't observe the driver, in fact, until almost immediately prior to the shooting, when he noticed the driver speaking kind of loudly to Danny Furance. And then when again, as I with Frederick, he was able to provide no physical description other than the black hoodie. And his sworn testimony in court. And I think this is notable. While he was able to identify he identified Mr. Carroll as the shooter in a lineup and in testimony at the police station when he was under oath. And I think this is notable. When he was under oath in court, he was unable to identify the shooter in the courtroom. And I think this sworn testimony belies his lack of certainty in his identification and impeaches his prior identification of Mr. Carroll as a shooter. And the states tried to explain this away by calling Lee a reluctant witness. But there's no evidence in the record of his reluctance to testify, only his inability to identify, again, under oath, Mr. Carroll was the shooter. And while requiring testimony under oath doesn't necessarily mean that is going to be absolute and certain, it certainly lends credibility to the witness's testimony. And it's notable that only when Lee was not under oath was he able to identify Mr. Carroll as a shooter. Finally, going to Mr. Furance, Danny Furance. While Danny Furance testified that he had sufficient opportunity to observe the offender, claiming that he had argued for nearly 10 minutes in close proximity with Mr. Carroll, other testimony presented by, I believe it was Mr. Frederick, was that he had only spoken to him for about one or two minutes. Again, Mr. Furance was not able to provide any descriptions of the driver of the vehicle, other than the black hoodie. He couldn't testify about the driver's face, testify about his hair. He had no knowledge of Mr. Carroll before, as to our knowledge. And certainly, while he was saying he had argued with him for 10 minutes, presumably, you would have some other identifying characteristics other than the fact somebody was wearing a black hoodie. The state tries to, and then again, at trial, when he was shown the lineup that he was shown and identified Mr. Carroll out of, he actually testified that the person he had identified as the shooter wasn't in the lineup. And the state has tried to explain this away by claiming it was due to an error with the state's trial attorney showing the wrong photograph to Mr. Furance. But Furance testified on both direct and cross. The photograph he was shown was the five-person lineup he viewed, and the person he identified as the driver was not there. Again, this is testimony under oath. And he was unable to identify the driver of the gold sedan when shown the photo array, and so he couldn't have been certain that Mr. Carroll, who was sitting in the courtroom at the time, was the shooter. So the pictures that were used, Plaintiff's Exhibit 1 and 2, are not in the record, is that correct? Correct. Neither ourselves or the state's attorney have been able to get access to those photos, so we've only been able to pull off of the trial record. The transcripts. And there was also a video put into evidence of Mr. Furance's identification during the lineup. That also doesn't appear to be in the record, is that correct? Correct. Yeah, we haven't been able to access that either. And from the testimony at trial, the video showed Mr. Furance viewing the lineup, but it didn't show the individuals in the lineup. But according to the testimony, the video confirmed that Mr. Furance picked out the defendant in the position number one. It confirmed that he chose somebody who was in number one, but it doesn't show who was in number one. And again, at trial, when asked showing the lineup, when shown the lineup that he claims he viewed on both cross and direct, Mr. Furance said that the defendant wasn't in the photo and the person that he identified wasn't in the photo. So again, it goes to his certainty and his identification and whether or not that similar to people versus Rodriguez, there are enough questions here as to the certainty of the identification and enough testimony that it would be appropriate for this court to set aside the finding of the trial court. You know, in Rodriguez, you had a- Counsel, you should bring your remarks to a close. I think your 15 minutes has expired. Certainly, Your Honor. If there are no further questions, you know, we would just simply ask that this court reverse the district court's conviction for aggravated battery with a firearm and aggravated discharge of a firearm based on the bigger factors. Or in the alternative, you know, reverse the conviction for aggravated discharge of a firearm and remand this case solely on the aggravated battery with a firearm. Thank you very much. State. You have to unmute. Oh, thank you, Your Honor. May it please the court. I'm Assistant State's Attorney Stacey Weber on behalf of the people of the state of Illinois. When you're reviewing an appeal on the basis of reasonable doubt, the standard of review is whether when viewing the evidence in the light most favorable to the people, any rational trier of facts could have found all of the essential elements beyond a reasonable doubt. And it is well established that a single witness is enough to sustain a conviction. And in this case, there was not just one single witness, but there were three. Looking first to the testimony of Gawan Frederick, he had two extended opportunities to observe the defendant the night of the shooting. He first observed him in a face-to-face conversation that lasted a couple of minutes. Gawan testified that he was about 10 feet away from the defendant, that there was lighting, although it was dark, there was light from both the house behind him and the school that was across the street. And that while the defendant was wearing a hoodie, he testified that he could see his whole face and hair. He then testified that he had a second opportunity to observe the defendant during the fight between the defendant and Danny Ferencz, when the defendant was seated in the driver's seat of the gold sedan and Danny Ferencz was in front of the victim's house. At this point, Gawan testified that he was 15 feet away from the defendant and he could still see his face during this argument. He then identified the defendant three separate times. He identified him two days after the shooting in a photo array as the shooter that night. He identified him again five days later in a physical lineup as the driver and the shooter. And he identified him without question at trial as the driver and the shooter of the victim on March 13th. Gawan's testimony was unimpeached, it was unrebutted, and it alone is sufficient to sustain the conviction. However, there was testimony from two more witnesses who identified the defendant. You also had the testimony of Danny Ferencz, who had the opportunity to observe the defendant during their face-to-face argument in front of the victim's house. Per Gawan's testimony, Danny Ferencz was only 10 feet away from the defendant during this argument. Now, Danny Ferencz identified the defendant without hesitation in court as the driver and the shooter that evening. It's also without question that he identified the defendant in the physical lineup five days after the shooting. In fact, he testified at trial that the defendant is the person that he identified in the physical lineup as the shooter. There's no question that the defendant is the person that he identified. And being shown the wrong photograph by the state's attorney while embarrassing only lends to his credibility where he refused to back down. He acknowledged that this is a photo of the lineup, but I identified the defendant, and I identified the defendant who was seated in position number one. When shown a close-up of the defendant who was seated in position number three in the exhibit that Danny Ferencz was shown at trial, he identified that, yes, that is in fact the person that I identified in the physical lineup. Now, Danny Ferencz's testimony was corroborated by the other witnesses at trial. The officer Remus, who administered the physical lineup, testified that Danny Ferencz identified the defendant and that the defendant was seated in position number one when Danny Ferencz identified him. Officer Remus looked at people's exhibit number one, the same photo that was shown to Danny Ferencz, and said, no, this was not the photograph. This was not the lineup that Danny Ferencz observed. And in fact, Gowan testified that he identified the defendant in position number three, and he identified people's exhibit number one as the photo of the lineup that he saw. You also had the testimony of Assistant State's Attorney Becky Walters, who spoke to Danny Ferencz after he identified the defendant in the physical lineup. And she testified that Danny Ferencz identified a photograph of the defendant as the person that he saw shooting that night. And he identified the photograph of the defendant as the person that he identified in the lineup. So there is no question that the defendant is the person that Danny Ferencz identified. You also had the identification of George Lee. George Lee had the opportunity, again, to observe the defendant during the fight between the defendant and Danny Ferencz that George Lee testified was a loud argument. George Lee testified at trial that he could see the defendant's face. And George Lee identified the defendant five days later, five days after the shooting in a physical lineup. Now, George Lee refused to point out the defendant at trial as the person he saw shooting, and he refused to identify the defendant at trial as the person that he picked out of the lineup. But there really is no question that the defendant is the person that he identified. And George Lee never says that he's wrong. He never said that he misidentified him. He just refuses to say that that's the person that he picked out at trial. But again, you had the testimony of Officer Remus, who conducted the physical lineup, who testified that George Lee made an identification and that he identified the defendant in the lineup. And the testimony of Assistant State's Attorney Walters, who spoke to Lee after he observed the lineup and that Lee identified a photograph of the defendant as the person that he saw pull out a gun and shoot into the crowd. And he identified the photograph of the defendant as the person that he had just identified in the lineup. And both identifications to Assistant State's Attorney Walters and Officer Remus, as well as his handwritten statements to Assistant State's Attorney Walters, were admitted as substantive evidence at trial under the Illinois rules of law. And even at trial, George Lee testified that he had told the Assistant State's Attorney the truth when he spoke to her. No witness took the stand and identified anyone other than the defendant as the person who shot the victim that night. The only person who was identified at trial as the shooter was the defendant. And the reliability of these identifications, as well as the credibility of the witnesses, are within the province of the finder of fact. The trial court in this case explicitly found the people's witnesses to be credible and explicitly found the defense's alibi witness was not credible. So in the light most favorable to the people, the evidence established that the defendant shot the victim on March 13th. And we would ask that his conviction for aggravated battery of a firearm be affirmed. Moving to the second issue. I could ask about the identification. And we do have the fact that this all took place about 10 p.m. at night. And there is testimony that it was dark despite some light being available. That it appears that none of the witnesses who identified the defendant knew him beforehand. And there wasn't a lot of description about the defendant given. So is it just these things that the defendant raises now before us undermine the reliability of the identification testimony? Well, unfortunately, there was no testimony really brought out at trial about their initial descriptions of the defendant. However, all of the bigger factors have to be viewed together. The totality of the circumstances has to be reviewed and the rest of the bigger factors support the identification of all three eyewitnesses who identified the defendant as. Thank you. Okay, with regard to one act, one crime, as I stated in our brief, the people agree that under these circumstances convictions for both the aggravated battery of a firearm conviction and the aggravated discharge of a firearm conviction violate one act, one crime. I do want to acknowledge a misstatement in my brief. The trial court was correct to merge the two convictions to merge the lesser conviction, the aggravated discharge of a firearm into the aggravated battery of a firearm. But then the trial court went on to say that he was sentencing the defendant on both consecutively. This may have been just a misstatement by the trial court. However, in general, when written orders contradict the transcript from the trial court, the transcript takes precedence. So to the extent that a sentence, a final conviction was entered, the sentence was entered for the aggravated discharge of a firearm conviction, we would agree that that's improper under one act, one crime. And to the extent that it exists, it should be vacated. However, there is no need to remand this for resentencing or to correct the minimus. As your honor pointed out, the minimus is already correct. All of the records in this, the electronic docket, the court sheet, Illinois Department of Corrections website, all of them correctly reflect only the defendant's conviction and sentence for aggravated battery with a firearm. And where there is nothing to correct, there's no reason to send the minimus back down. Also, as your honor pointed out, defendant received the minimum sentence on a Class X felony. That is a non-probationable offense. Six years is the minimum that the defendant could receive on this. And there is no need to send it back down just to reach the same conclusion. Your honors, for these reasons, and those contained in our brief, we would respectfully ask that this court affirm the defendant's conviction and sentence for aggravated battery with a firearm. Thank you. Rebuttal. Ms. Hausfeld, rebuttal. Yes. Sorry, your honor. I was making sure I was unmuted. I want to address quickly two factual points that the state's attorney raised. First of all, she said several times that the witnesses were able to see the shooter's full face. As this court has pointed out, nobody provided any description despite having seen his full face. There was no testimony about his face. The only testimony was from the victim that described him as black and with dreads. Certainly, this isn't sufficient to convict somebody beyond a reasonable doubt. In addition, both Dajan and Mr. Lee testified that his face was covered by a black hood that obscured it, despite the fact that there was testimony saying that they could see his whole face. They also then subsequently said that his face was obscured and they couldn't see it due to the hood. So again, you have the contradiction in the testimony there. As this court decided in Rodriguez, when certainly with a much more definitive description, having conflicting testimony between two witnesses was sufficient to set aside the trial court's finding. So in Rodriguez, you had two main witnesses to a suspect of a murder. And the eyewitness to the murder provided an initial description of a gunman to the police at the scene of the crime. And then a few hours later, he was at the police station. And after reviewing a composite sketch, he pointed out that the person he had viewed had a mustache. Approximately two months after the shooting, he then told the investigating detective that a week after the shooting had occurred, he saw the gunman in front of a grocery store loading a snowblower into a truck. But he didn't tell the police at the time because he was afraid the gunman recognized him. An employee at the grocery store testified that the composite sketch that the police had drawn up looked like the man who had tried to sell him a snowblower, but it was slightly different. The investigating detective arranged a lineup that included the defendant, but the store employee didn't identify the defendant. The eyewitness did in both the lineup and a photo array. At trial, the store employee subsequently testified that the man who tried to sell him the snowblower had a different nose and did not have a mustache. That was sufficient for this court to determine that the state had failed to meet its burden of proof. And it's no different here, Your Honors. And here you have conflicting identification testimony. You have witnesses who say, well, I can see his whole face, but actually his face was obscured by a hood. They haven't provided any description of the shooter other than the fact that he was black and had dreads. None of them had met Mr. Carroll before. You have Mr. Lee under oath unable to identify Mr. Carroll as the shooter. So the burden of proof here is beyond a reasonable doubt. While it's true that great deference is to be paid to the trial court, when the evidence here is just so unsatisfactory and unreasonable, I mean, there's no physical evidence connecting Mr. Carroll to this crime. There's no physical evidence connecting him to the car that was driven. There's literally nothing other than these conflicting identification testimonies. And so while we understand that it's an extraordinary remedy that we're asking this court to grant, and it's one that should be used sparingly, it exists precisely for situations such as the one before this court today and like the situation in Rodriguez. None of the witnesses who testified were even able to provide testimony regarding what the shooter looked like. And so when only the victim, who was the only person who didn't identify Mr. Carroll as a shooter, only the victim was able to describe what the countenance of the shooter looked like, and he wasn't able to identify Mr. Carroll as the shooter. So the state has to prove beyond a reasonable doubt that Mr. Carroll committed this crime. As in Rodriguez, the lack of consistent credible witness testimony coupled with the lack of any other evidence connecting Mr. Carroll to this crime is precisely the situation that warrants setting aside the trial court's judgment and reversing Mr. Carroll's conviction. So unless this court has further questions for me, that's exactly what we would ask that you do. Nothing further. Counsels, thank you. The matter will be taken under advisement and the decision issued in due course.